# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

v.

DAVID R. OLOFSON

**CRIMINAL COMPLAINT**

CASE NUMBER: 06-M-486

I, Jody M. Keeku, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief. On or about July 13, 2006, in the State and Eastern District of Wisconsin, **David R. Olofson** knowingly transferred a machinegun, to wit, an Olympic Arms, Model CAR-AR, .223 caliber rifle bearing serial number F7079, all in violation of Title 18, United States Code, Section 922(o).

I further state that I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and this complaint is based on the following facts:

Please see the attached affidavit.

Continued on the attached sheet and made a part hereof:   X  Yes  ___ No

Signature of Complainant
Jody M. Keeku

Sworn to before me and subscribed in my presence,

November 17th 2006
Date

at Milwaukee, Wisconsin
City and State

The Honorable WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
**Name & Title of Judicial Officer**

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

**JODY M. KEEKU**, being duly sworn, deposes and states as follows:

1. I am a Special Agent of the Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since July of 2001. I am also trained as a Firearms Interstate Nexus Expert. I am currently assigned to the Milwaukee Field Office of the St. Paul Field Division. My duties consist of investigating violations of federal firearms laws, including but not limited to Title 18 U.S.C. 922(*o*).

2. I have also received training in the area of firearms investigation. More specifically, I have been trained in the areas of illegal firearms training and firearms identification.

3. All of the information contained herein is based upon my personal knowledge and investigation or upon information supplied to me by other law enforcement officers or citizen witnesses, all of whom I believe to be truthful and reliable. In particular, I believe Robert J. Kiernicki to be truthful and reliable because in the past he has provided reliable statements to City of Berlin Police Department officers and to ATF agents.

## INVESTIGATIVE INFORMATION ESTABLISHING PROBABLE CAUSE

4. I believe that the following information establishes probable cause to believe that, on or about July 13, 2006, David R. Olofson knowingly transferred a machinegun to another individual, in violation of 18 U.S.C. § 922(*o*).

5. On July 13, 2006, I spoke with officer Officer Robert Zache of the City of Berlin Police Department, who explained that Officer Splittegerber (also of the City of Berlin Police Department) earlier that day had responded to the Berlin Conservation Club, in Berlin, Wisconsin. Officer Spittleberger interviewed three individuals there: Brian J. Malzhan; Cory L. Cihlar; and Robert J. Kiernicki. Kiernicki was in possession of an Olympic Arms, SGW Rifle, Model CAR-AR, .223 caliber, serial number F7079. Office Splittegerber inspected the firearm and documented the identifying information.

6. At approximately 9:30 a.m. on July 13, 2006, Officer Zache spoke with Kiernicki at his home. Kiernicki stated that the Olympic Arms, serial number F7079 belonged to David Olofson. Officer Zache inspected the firearm, and found that it was the same one that Officer Splittegerber had inspected at the range.

7. Kiernicki explained that the firearm had a selector switch that could be placed in any of three positions. One position was marked "Safe," one was marked "Fire," and one was unmarked. According to Kiernicki, when the selector switch was in the unmarked third position, the firearm fired in a three-round burst. That is, the firearm was designed so that, when the switch was in the third position, the firearm would automatically fire three shots with a single pull of the trigger. Kiernicki said that he had fired the firearm in the three-round burst position twice, and that it had jammed after the third try.

8. Kiernicki explained that Olofson had loaned the firearm to him until Kiernicki takes possession of one he ordered from Olofson. Kiernicki explained that he had ordered a firearm from Olofson sometime earlier in 2006. After the firearm arrives, Olofson will contact Kiernicki and then the two of them would assemble it. Kiernicki told Olofson he didn't want the extra "pin" in it like the Olympic Arms, serial number F7079, to make it fire three round burst.

9. Officer Zache took the firearm into custody until I could inspect it.

10. On that same day Kiernicki called Olofson to advise him that the Berlin Police Department had taken the Olympic Arms, serial number F7079 into custody. Kiernicki told Olofson that he had been firing the Olympic Arms, serial number F7079 on three round burst and someone reported it to the police. Kiernicki told Olofson that a Berlin Police Department officer had come to his house and taken the firearm. Olofson stated that he had been to the Conservation Club and fired automatic firearms and had never been bothered by the police.

11. On July 14, 2006, Olofson contacted Berlin Police Department Captain Kevin Block to inquire about his firearm in their custody. Captain Block explained to Olofson that the firearm had been taken from Kiernicki and that the case was now being investigated by ATF. Olofson stated that the Police Department didn't even know what they had (referring to the firearm). He stated that if ATF thought that his Olympic Arms, serial number F7079 was something, they should see the other firearms he has. Olofson told Captain Block that he had hundreds of firearms, including a .50 caliber sniper rifle.

12. Olofson explained to Captain Block that the Olympic Arms, serial number F7079 was his "loaner" firearm. If people wanted to buy a firearm from him, he allowed them to use the Olympic Arms to see if they like it. Olofson claimed that the selector switch did not work on the Olympic Arms.

2

13. On July 17, 2006, I inspected the Olympic Arms, serial number F7079 and found that the selector switch moved through all three positions. I then inspected the bolt and observed that it had been filed down. I then performed a functions check and found that the firearm functioned in all three positions, including the unmarked third position.

14. Case agents then interviewed Kiernicki at the Berlin Police Department where Kiernicki gave a sworn statement. Kiernicki said that, on Thursday, July 13, 2006, he borrowed the Olympic Arms, serial number F7079 and obtained .223 caliber ammunition from Olofson. He then went to the Berlin Conservation Club and fired the firearm. Kiernicki explained that Olofson told him not to fire the weapon in three round burst because it might malfunction. Kiernicki decided to try the three round burst and fired it twice in that selection before it jammed.

15. Kiernicki explained that he was borrowing the Olympic Arms, serial number F7079 because he had ordered an AR 15 rifle from Olofson that had not come in yet. When the firearm arrived, Olofson and Kiernicki were going to assemble it; Kiernicki would then pay Olofson $550.00 for the rifle. Kiernicki had already given Olofson his 30/30 Marlin Rifle for a down payment.

16. Kiernicki advised that Olofson gets old firearms and then remanufactures them and sells them over the internet on EBAY. Kiernicki also said that Olofson's computer was located in his basement. Kiernicki stated that the manufacturing room was in the basement also. He had seen into Olofson's manufacturing room, which contained a bench with screwdrivers, pliers, vice grips, and a hammer. Olofson told Kiernicki that they would assemble the AR 15 Kiernicki ordered in that room.

17. On November 6, 2006, a Firearms Enforcement Officer with ATF test fired the Olympic Arms, serial number F7079. The Officer used 60 rounds of commercially available, .223 caliber ammunition. Three tests were performed, each with twenty rounds of ammunition. When the selector switch was placed in the unmarked third position, the firearm fired all twenty rounds automatically in each of the three tests.

18. Based on his test firing, the ATF Officer concluded that the Olympia Arms .223 caliber rifle, bearing serial number F7079

    a. is a weapon that expels a projectile by the action of an explosive, and is therefore a "firearm" as that term is defined in 18 U.S.C. § 921(a)(3)(A);
    b. is a weapon that shoots automatically more than one shot, without manual reloading, by a single function of the trigger, and is

3

therefore a "machinegun" as that term is defined in 26 U.S.C. § 5845(b); and

    c.  because it is a machinegun, is also a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

19. On July 13, 2006, I caused a search to be conducted of the National Firearms Registry for David R. Olofson (M/W, DOB 06/12/1971). There is no record of any firearms being registered to Olofson. Also, the Olympic Arm, SGW, Model CAR-AR, serial number F7079 is not registered to anyone

20. A search of the Federal Firearms Licensee database shows that David R. Olofson is not a licensed manufacturer or dealer of firearms.

21. On July 19, 2006, case agents executed a search warrant at Olofson's residence. During the search, agents located thousands of rounds of ammunition of various calibers.

22. During the search of Olofson's residence, agents also located and seized the firearms listed in Attachment A to this affidavit.

23. Agents also seized a computer from Olofson's residence. A forensic examination of the computer has revealed, among other things, a spreadsheet listing various types of firearms parts (including upper and lower receivers), prices, and parts numbers. The computer also contained saved e-mail correspondence in which Olofson quotes other individuals prices for the firearms parts listed in the spreadsheet. Other e-mail correspondence on the computer indicates that Olofson was engaging in the unauthorized use of a federal firearms licensee number assigned to another individual or entity.

24. The foregoing information is set forth for the limited purpose of establishing probable cause to support the issuance of a criminal complaint. The foregoing information does not represent all of the information known to case agents regarding David R. Olofson's illegal firearms-related activities.

4

## ATTACHMENT A: FIREARMS SEIZED

OTHER FIREARM, MNF: UNKNOWN MANUFACTURER, TYPE: RIFLE, MODEL: FAL, CAL: **, SN: NS
RIFLE, MNF: RUGER, TYPE: RIFLE, MODEL: 10/22, CAL: 22, SN: 239-14918
SHOTGUN, MNF: REMINGTON ARMS COMPANY, INC., TYPE: SHOTGUN, MODEL: 870 WINGMASTER, CAL: 12, SN: S264442M
SHOTGUN, MNF: SPRINGFIELD FIREARMS CORPORATION, TYPE: SHOTGUN, MODEL: 1929, CAL: 410, SN: NONE
SHOTGUN, MNF: WINCHESTER, TYPE: SHOTGUN, MODEL: 12, CAL: 12, SN: 738906
RIFLE, MNF: WINCHESTER, TYPE: RIFLE, MODEL: 190, CAL: 22, SN: 344969
SHOTGUN, MNF: ITHACA GUN CO., TYPE: SHOTGUN, MODEL: NONE, CAL: 12, SN: 230749
SHOTGUN, MNF: MARLIN FIREARMS CO., TYPE: SHOTGUN, MODEL: NONE, CAL: 410, SN: 2388
RIFLE, MNF: MARLIN FIREARMS CO., TYPE: RIFLE, MODEL: GLENFIELD MODEL 30, CAL: 30-30, SN: 69 88839
SHOTGUN, MNF: LEFEVER, TYPE: SHOTGUN, MODEL: NITRO SPECIAL, CAL: 16, SN: 197471
RIFLE, MNF: REMINGTON ARMS COMPANY, INC., TYPE: RIFLE, MODEL: MODEL 24, CAL: 22, SN: 25208
SHOTGUN, MNF: REMINGTON ARMS COMPANY, INC., TYPE: SHOTGUN, MODEL: WINGMASTER 870, CAL: 12, SN: V953261X
HANDGUN, MNF: SMITH & WESSON, TYPE: REVOLVER, MODEL: 18-4, CAL: 22, SN: 92K2963
HANDGUN, MNF: SMITH & WESSON, TYPE: REVOLVER, MODEL: 29-3, CAL: 44, SN: AYC4724
HANDGUN, MNF: SIG-SAUER, TYPE: PISTOL, MODEL: P226, CAL: 9, SN: U156310
RIFLE, MNF: MAUSER, TYPE: RIFLE, MODEL: 98, CAL: 32, SN: 7242
HANDGUN, MNF: MAUSER, TYPE: PISTOL, MODEL: HSC, CAL: 765, SN: 745058
HANDGUN, MNF: RUGER, TYPE: RIFLE, MODEL: MARK I, CAL: 22, SN: D328161
HANDGUN, MNF: SAVAGE, TYPE: PISTOL, MODEL: 516, CAL: 308, SN: F778513