UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 06-CR-320

DAVID R. OLOFSON,

    Defendant.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS INDICTMENT**

**I. Background**

On December 5, 2006, a federal grand jury returned a single-count indictment charging David R. Olofson with knowingly transferring a machinegun in violation of 18 U.S.C. § 922(*o*). Olofson has filed a motion to dismiss the indictment, contending (1) that Congress's power to regulate interstate and foreign commerce does not allow it to criminalize intrastate machinegun transfers, and (2) that the Second Amendment guarantees Olofson the right to transfer a machinegun. For the reasons set forth below, each of these arguments is without merit,[1] and the government asks the Court to recommend that Olofson's motion be denied.

---

[1] Olofson acknowledges that his arguments are foreclosed by Seventh Circuit precedent; he raises the issues to preserve them for appeal.

Case 2:06-cr-00320-CNC   Filed 04/23/07   Page 1 of 6   Document 47

## II. Analysis

**A. Section 922(*o*) – even to the extent that it prohibits intrastate transfers of machineguns – represents a valid exercise of Congressional power under the Commerce Clause.**

Congress can regulate three categories of activity under its commerce power: (1) the use of the channels of interstate commerce; (2) the use of the instrumentalities of interstate commerce; and (3) those activities having a substantial relation to interstate commerce. *United States v. Lopez*, 514 U.S.549, 558-59 (1995). An intrastate transfer of a machinegun like that alleged to have been committed by Olofson cannot be justified under either of the first two categories. Such transfers do, however, have a substantial affect upon interstate commerce and therefore fall within the third category. *United States v. Kenney*, 91 F.3d 884 (7th Cir. 1996); *cf. Gonzales v. Raich*, 545 U.S. 1 (2005) (upholding the Controlled Substances Act's regulation of purely local activity because of its substantial effect on interstate commerce); *United States v. Stewart*, 451 F.3d 1071 (9th Cir. 2006) (holding that criminalization of simple possession of a machinegun manufactured intrastate was valid exercise of Congress's commerce power).

As Olofson recognizes, this Court is bound by *Kenney,* which forecloses the argument he makes here. Nonetheless, to preserve the issue for appeal, Olofson contends that *Kenney* is inconsistent with the Supreme Court's decision in *United States v. Morrison*, 529 U.S. 598 (2000), particularly given that his was alleged to have been an intrastate transfer.

In *Morrison*, the Court identified four considerations to guide the determination of

2

whether intrastate activity substantially affects interstate commerce and therefore falls within Congress's Article I, Section 8 authority: (1) whether the regulated activity is commercial or economic in nature; (2) whether an express jurisdictional element is provided in the statute to limit its reach; (3) whether Congress made express findings about the effects of the proscribed activity on interstate commerce; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated. *Stewart*, 451 F.3d at 1074 (citing *Morrison*, 529 U.S. at 610-12); *United States v. Peters*, 403 F.3d 1263, 1272 (11th Cir. 2005) (citing *Morrison*, 529 U.S. at 610-12).

Olofson argues that the intrastate transfer of a machinegun falls short on each of these factors. The type of analysis in which he engages, however, was rejected by the Supreme Court in *Raich*. There, the Court considered whether the Controlled Substances Act could constitutionally be applied to intrastate possession of marijuana for medicinal purposes. In upholding that application of the Act, the Court noted that "Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market. . . ." *Raich*, 545 U.S. at 18 (citing *Wickard v. Filburn*, 317 U.S. 111 (1942)).

This principal applies with equal force to the regulation of the possession and transfer of machineguns: The prohibition on possessing and transferring machineguns is an essential part of the federal scheme of regulation of interstate commerce in dangerous weapons. *See*

3

*United States v. Haney*, 264 F.3d 1161, 1168-69 (10th Cir. 2001).[2] Where, as here, a general regulatory statute bears a substantial relation to commerce, the fact that a particular instance falling under that statute may not have itself affected interstate commerce is of no consequence. *Raich*, 545 U.S. at 17; *Lopez*, 514 U.S. at 558; *Wickard*, 317 U.S. at 128-29.

**B. The Second Amendment does not confer upon all individual citizens an unqualified right to transfer machineguns.**

It is well-established in this Circuit that criminal statutes do not run afoul of the Second Amendment merely by prohibiting gun possession by certain categories of individuals. *E.g., United States v. Price*, 328 F.3d 958, 961 (7th Cir. 2003)(upholding the federal felon-in-possession statute against Second Amendment attack); *United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir. 2001)(upholding constitutionality of 18 U.S.C. §§ 922(g)(1) and 922(g)(9)); *Gillespie v. City of Indianapolis*, 185 F.3d 693, 710-11 (7th Cir. 1999)(rejecting Second Amendment challenge to 18 U.S.C. § 922(g)(9), which prohibits those convicted of misdemeanor crimes of domestic violence from possessing a firearm). *See also Lewis v. United States*, 445 U.S. 55, 65, n.8 (1980)(stating that predecessor statute prohibiting

---

[2]Olofson also notes the lack of specific Congressional findings as to the affect of transferring a machinegun on interstate commerce. The *Raich* Court responded to a similar argument: "[W]e have never required Congress to make particularized findings in order to legislate . . . While congressional findings are certainly helpful in reviewing the substance of a congressional statutory scheme, particularly when the connection to commerce is not self-evident, and while we will consider congressional findings in our analysis when they are available, the absence of particularized findings does not call into question Congress' authority to legislate." *Raich*, 545 U.S. at 21. And, in any event, Congress has specifically found that as a general matter "firearms and ammunition move easily in interstate commerce." 18 U.S.C. § 922(q)(1)(C).

4

possession of firearms by convicted felons "do[es] not trench upon any constitutionally protected liberties."). As Olofson recognizes, this controlling authority forecloses his constitutional argument.

Moreover, the Second Amendment protects (at least under certain circumstances) keeping and bearing arms. Olofson contends that the Second Amendment guarantees him the right to *transfer* a machinegun. The type of activity with which Olofson is charged does not, at least as a textual matter, fall squarely within the compass of the Second Amendment. Even if, as Olofson suggests, the tide of judicial interpretation is moving toward the individual rights model, it is not clear that the tide will sweep up all possessory and non-possessory firearms activity.

5

Case 2:06-cr-00320-CNC   Filed 04/23/07   Page 5 of 6   Document 47

### III. Conclusion

Based on the foregoing, the government respectfully requests that the Court recommend that Olofson's motion to dismiss the indictment be denied.

Dated at Milwaukee, Wisconsin, this 23rd day of April, 2007.

    Respectfully submitted,

    STEVEN M. BISKUPIC
    United States Attorney

By:    s/Gregory J. Haanstad
    Assistant United States Attorney
    Gregory J. Haanstad: 1036125
    Office of the United States Attorney
    Eastern District of Wisconsin
    517 East Wisconsin Avenue, Room 530
    Milwaukee, Wisconsin 53202
    Telephone: (414) 297-4581