UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                         Case No. 06-CR-320

DAVID R. OLOFSON,

      Defendant.

**GOVERNMENT'S POST-HEARING BRIEF RE:
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

**I. Background**

On December 5, 2006, a federal grand jury returned a single-count indictment charging David R. Olofson with knowingly transferring a machinegun in violation of 18 U.S.C. § 922(*o*). Olofson has filed a motion to suppress statements that he made to law enforcement officials. For the reasons set forth below, the government asks the Court to recommend that Olofson's motion be denied.

**II. Facts**

On July 19, 2006, a combination of federal and local law enforcement agents executed a search warrant at David Olofson's residence. Tr. 6. Among those participating in the execution of the search warrant were Special Agent Jody Keeku from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and Officer Georgia Trochinski from the Berlin

1

Police Department. Tr. 6-7, 28.

When they arrived at Olofson's residence to execute the warrant, a number of law enforcement personnel knocked on the door of the residence. Tr. 7-8. Olofson answered the door and was told that the agents had a search warrant. Tr. 8. Olofson then was temporarily handcuffed and placed in the back of a squad car. Tr. 8-9. After approximately fifteen minutes, Agent Keeku approached Olofson. Tr. 9. She told him that he was not under arrest, but that he could not enter the residence while the search was being conducted. Tr. 10. After telling Olofson that he was not under arrest, Agent Keeku asked him whether he would accompany her to the police station to speak with law enforcement. Tr. 10-11. Olofson responded that he would. Tr. 11.

Before accompanying the agents to the police station, Olofson made arrangements for someone to watch his children. Tr. 11-13. The agents had removed the handcuffs from Olofson by this point. Tr. 12. He called his wife to discuss the situation with her, and he ultimately asked a friend of his to watch the children until his wife came home. Tr. 12-13. Olofson signed a statement acknowledging that he wanted his friend to watch the children until his wife arrived. Tr. 12; Ex. 3.

Agent Keeku and Officer Trochinski drove Olofson the approximately five blocks to the police station. He sat – without handcuffs – in the backseat of the car along with Agent Keeku, while Officer Trochinski drove. Tr. 13. Once at the station, Olofson and the two agents went to Officer Trochinski's office. The office was approximately 8 feet by 10 feet.

2

The agents both sat behind desks, while Olofson sat near the office's door. Tr. 14, 29. Upon entering the office, Agent Keeku reiterated that Olofson was not under arrest and that he was free to leave at any time. Tr. 14, 32. Olofson indicated that he understood and that he wanted to stay and answer the agents' questions. Tr. 14.

Agent Keeku and Officer Trochinski then began questioning Olofson regarding the firearms offense that was the subject of the search warrant. Tr. 15. Olofson spent approximately three hours with Agent Keeku and Officer Trochinski at the police station. Not all of that time, however, was spent answering the agents' questions. Tr. 15, 29, 31. Much of it was spent "passing time while the search warrant was being executed" – Olofson was not able to return to his residence while the warrant was being executed. Tr. 15, 23, 31. And Olofson was allowed to leave Officer Trochinski's office to use the bathroom. Tr. 16, 29-30.

At no time during his stay at the police station did Olofson ever indicate that he no longer wished to answer questions; at no time did he indicate that he wanted to speak with an attorney; and at no time did he ask whether he could leave. Tr. 16, 32. Olofson seemed comfortable and at ease during the interview. Tr. 31.

3

### III. Analysis

At no time was Olofson advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Miranda* warnings need only be provided, however, prior to custodial interrogation. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in a significant way." *Miranda*, 384 U.S. at 444. A person must therefore be both in custody and subjected to interrogation to trigger the *Miranda* protections.

The government concedes that Olofson was being "interrogated" when he provided his statement to law enforcement. The agents' questions regarding Olofson's transfer of a machinegun and regarding his knowledge of the process of converting a firearm to a machinegun clearly were intended to elicit potentially incriminating responses from Olofson. *See Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The issue in dispute is whether Olofson was in custody when he was questioned. Based on the analysis that follows, he was not.

In determining whether Olofson was in custody, the Court must determine whether his freedom of movement was restrained to a degree comparable to formal arrest. *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998). That assessment is, in turn, guided by several factors: (1) whether the encounter occurred in a public place; (2) whether the defendant consented to speak with the officers; (3) whether the officers informed the defendant that he

4

was not under arrest and was free to leave; (4) whether the defendant was moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents that he needed continue on his way; and (7) the officers' demeanor. *United States v. Scheets*, 188 F.3d 829, 836-37 (7th Cir. 1999). The defendant bears the burden of proving custody. *United States v. Charles*, 738 F.2d 686, 692 (5th Cir.1984); *United States v. Suchit*, 480 F. Supp. 2d 39, 53 (D.C. Cir. 2007).

The questioning of Olofson did take place in a police station, which obviously is not as familiar or comfortable a setting as is a his home. But questioning in an arguably coercive environment does not necessarily mean that a defendant is in custody. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)("Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house . . . ."); *United States v. Wyatt*, 179 F.3d 532, 535 (7th Cir. 1999). Olofson voluntarily went to the police station with Agent Keeku and Officer Trochinski after specifically being advised that he was not under arrest and that he did not have to go with them. *Cf. United States v. Jones*, 21 F.3d 165, 170 (7th Cir. 1994); *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003)(holding that *Miranda* warnings were not required when officers had transported a suspect to the police station for questioning – the suspect had voluntarily accompanied the officers to the station and was told that he was free to leave).

Agent Keeku again told Olofson that he was free to leave once he arrived at the station.

5

After being so advised, Olofson consented to speak with the officers. At no time during the questioning did Olofson indicate that he no longer wished to answer questions or that he wanted to speak with a lawyer. Nor did Olofson ever ask to leave the police station. Only two officers were present during the questioning, and neither of them at any time displayed their firearms. The questioning took place not in a holding cell, but in an office to which the door was at times open. Olofson was allowed to use the bathroom, unaccompanied and unmonitored.[1]

The picture that the evidentiary hearing testimony painted was of a calm interview, during which Olofson appeared "comfortable", "at ease", and even "smug."[2] Olofson was not subject to a restraint of freedom closely approximating the conditions of a formal arrest. Because he was not "in custody," there was no need for law enforcement agents to provide *Miranda* warnings.

---

[1]This may seem a small concession to a suspect, but it does represent a form of freedom from arrest-like restraint of movement. *Cf. United States v. Calimlim,* (No. 04-CR-248) 2005 WL 2922193, at *30 (E.D. Wis. Nov. 4, 2005).

[2]When he testified, Olofson did not quarrel with the law enforcement agents' depiction of the interview. Indeed, his testimony did not address at all the circumstances preceding and during his questioning. Olofson did not dispute that he voluntarily accompanied the agents to the police station and consented to speak with them; he did not dispute that he was told that he was not under arrest and that he was free to leave; he did not contend that Agent Keeku or Officer Trochinski displayed their weapons or used physical force during the interview. Olofson offered no testimony that the environment at the police station was coercive. Instead, in an effort to carry his burden of proving custody, Olofson testified simply that he was driven – as opposed to having walked – back to his residence at the conclusion of his interview.

### III. Conclusion

Based on the foregoing, the government respectfully requests that the Court recommend that Olofson's motion to suppress be denied.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2007.

    Respectfully submitted,

    STEVEN M. BISKUPIC
    United States Attorney

By:    s/Gregory J. Haanstad
       Assistant United States Attorney
       Gregory J. Haanstad: 1036125
       Office of the United States Attorney
       Eastern District of Wisconsin
       517 East Wisconsin Avenue, Room 530
       Milwaukee, Wisconsin 53202
       Telephone: (414) 297-4581