UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     Case No. 06-CR-320

DAVID R. OLOFSON,

        Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

### Background

On December 5, 2006, a grand jury in the Eastern District of Wisconsin returned an indictment charging David R. Olofson with transferring a machine gun, in violation of 18 U.S.C. §§ 922(*o*) and 924(a)(2). He went to trial and, on January 8, 2008, was convicted. Olofson now has filed a motion for judgment of acquittal. For the reasons set forth below, Olofson's motion should be denied.

### Argument

**I.    The evidence presented at trial clearly supports a rational finding that each element of the offense was established beyond a reasonable doubt.**

Olofson contends that the evidence presented at trial was insufficient to sustain a conviction. A defendant making such a claim faces a daunting challenge. *United States v. Suggs*, 374 F.3d 508, 518 (7th Cir. 2004); *United States v. Brown*, 328 F.3d 352, 355 (7th Cir.

1

2003). The issue to be addressed by the court is whether the evidence presented at trial, when viewed in the light most favorable to the government, could support a rational juror in finding beyond a reasonable doubt each essential element of the offense charged. *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2006); *United States v. George*, 363 F.3d 666, 674 (7th Cir. 2004). In making this determination, the court is not to re-weigh the evidence or make credibility determinations. *Brown*, 328 F.3d at 355. Rather, the court is simply to assess the trial record to determine whether it contains evidence from which a reasonable juror could find guilt beyond a reasonable doubt. *United States v. Graham*, 315 F.3d 777, 781 (7th Cir. 2003).

Olofson was charged with transferring a machine gun. To prove that Olofson committed the offense, the government was required to establish beyond a reasonable doubt (1) that Olofson knowingly transferred a machine gun; and (2) that Olofson knew, or was aware of, the essential characteristics of the firearm that made it a machine gun. *See United States v. McGiffen*, 267 F.3d 581 (7th Cir. 2001); *Eleventh Circuit Pattern Jury Instructions - Criminal*, instruction 34.8, p. 216.

    **A.**    **The evidence at trial clearly supports a rational finding that the firearm in question was a machinegun.**

Olofson argues that, because the statute is written in the present tense, a firearm qualifies as a machinegun only if it always fires automatically and only if it fires automatically regardless of the type of ammunition used.

Olofson's interpretation does not flow from a reading of the plain language of § 922(*o*). Rather, his interpretation engrafts additional elements onto the statute, which by
2

its terms does not require any explanation for automatic fire (such as that a particular type of ammunition be used or that a firearm be modified to cause automatic fire); nor does the statute require any particular number of tests or any particular "error rate." Factors like those identified by Olofson are relevant only to the extent that they shed light on whether Olofson knew that his firearm fired automatically. And, to the extent that Olofson might suggest, for example, that ATF's first negative test (using special military-grade ammunition) shows that he did not know that his firearm fired automatically, there is ample evidence in the record that demonstrates that he did have the requisite knowledge.[1]

Again, Olofson argues only that his firearm was not a machinegun under § 922(*o*). A machine gun is any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. 18 U.S.C. § 921(a)(23); 26 U.S.C. § 5845(b). The record contains ample evidence from which the jury could rationally conclude that Olofson's firearm fit

---

[1] In his motion, Olofson argues only that his firearm was not a "machinegun" under § 922(*o*). He makes no argument regarding his knowledge of the firearm firing more than one round with a single function of the trigger. In any event, again, the record contains ample evidence that Olofson had such knowledge. For example, Robert Kiernicki testified that Olofson made comments to him – both before and after law enforcement officers seized Olofson's firearm – acknowledging that Olofson had himself fired the gun automatically in the past. Moreover, Firearms Technology Officer (FTO) Max Kingery testified that Olofson's firearm fired automatically because, although it was a semiautomatic AR-15, it had M-16 fire control components installed in it. Kingery also testified that the particular M-16 components – the trigger; the selector; the hammer; and the disconnector – in Olofson's firearm were not installed by the manufacturer. Someone had to have modified the firearm to include those four components. And e-mails and other documents on Olofson's computer showed that he had ordered M-16 parts. Olofson also had a manual that described how to convert a semiautomatic AR-15 to an automatic M-16 by substituting the very M-16 parts that were in Olofson's gun. This evidence strongly suggests that Olofson had actually made the modifications that converted his firearm to an automatic; at a minimum it demonstrates that he was aware that the modifications had been made and that those modifications allowed his gun to fire automatically.

3

this definition. In fact, the firearm consistently fired automatically at a number of different points in time, beginning before Olofson provided it to Kiernicki and extending through the final ATF testfire. Kiernicki testified that Olofson acknowledged having fired the gun automatically before loaning it to Kiernicki. And Kiernicki testified that he fired the gun automatically on the day officers seized the gun from him. And, after the gun was seized, FTO Kingery test fired it and found that it fired automatically. In fact, the jury was shown a video of the firearm firing automatically. That the firearm failed to fire automatically on one occasion when it was loaded with special hard-primered military grade ammunition does not remove the gun from the compass of the statutory definition.

**II.     Section 5845 is not unconstitutionally vague as applied Olofson's conduct.**

While 18 U.S.C. § 922(*o*) proscribes possession of a machinegun, the term "machinegun" is defined in 26 U.S.C. § 5845. Olofson contends that the latter statute is unconstitutionally vague.

"Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of ordinary notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *see also United States v. Lim*, 444 F.3d 910, 915 (7th Cir. 2006). Vagueness challenges that do not implicate First Amendment freedoms must be analyzed in light of the application of the statute to the facts of the case at hand. *United States v. Powell*, 423 U.S. 87, 92 (1975). A statute is unconstitutionally vague as applied only if the defendant could not have known

4

that the conduct underlying his conviction was covered by the statute. *United States v. Warner*, 498 F.3d 666, 697 (7th Cir. 2007); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (explaining that a vagueness challenge "rest[s] on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk.").

Olofson claims that § 5845 is vague because, under the facts of his case, "he could not know whether he had a malfunctioning rifle or a machine gun." Def. Motion at 5. Olofson misapprehends the relevant issue, which is simply whether – at the time that he transferred the firearm to Kiernicki – Olofson knew that it fired automatically. And, again, here there is ample evidence that Olofson had such knowledge. *See supra*, note 1.

The evidence presented at trial established that Olofson's gun fired automatically not because of an unintended malfunction, but rather because M-16 components had been installed. The evidence further established (or at least supports a rational jury finding) that Olofson knew that the M-16 components caused the gun to fire automatically. Most importantly – and most to the point for purposes of the present motion – the evidence presented at trial established that Olofson provided his automatically firing firearm to Kiernicki and that, when he transferred the gun, Olofson knew that it fired automatically. *See supra*, note 1. Because the statute provides clear notice that such conduct is criminal, and because the clear definition of a machinegun (particularly when coupled with the knowledge requirement in 18 U.S.C. § 924(a)(2)) did not result in arbitrary enforcement, the statute is not unconstitutionally vague as applied to Olofson in this case.

5

**Conclusion**

Based on the foregoing, the government asks that this Court deny Olofson's motion for a judgment of acquittal.

Respectfully submitted this 13th day of March, 2008.

                          STEVEN M. BISKUPIC
                          United States Attorney
      By:

                          s/Gregory J. Haanstad
                          Assistant United States Attorney
                          Gregory J. Haanstad: 1036125
                          Attorney for Plaintiff
                          Office of the United States Attorney
                          Eastern District of Wisconsin
                          517 East Wisconsin Avenue, Room 530
                          Milwaukee, Wisconsin 53202
                          Telephone: (414) 297-4581
                          Fax: (414) 297-1738
                          E-Mail: greg.haanstad@usdoj.gov