UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 06-CR-320

DAVID R. OLOFSON,

    Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION
FOR JUDGMENT OF ACQUITTAL**

David R. Olofson, by counsel, submits this reply in support of his judgment of acquittal.

**Insufficient Evidence**

In footnote one of its response brief, the government asserts that the state of the evidence at trial was that Olofson's semi-automatic AR-15 fired automatically because it had M-16 fire control components, specifically a M-16 trigger, hammer, disconnector and selector. The government also asserts that Olofson's rifle was not manufactured with that configuration of parts. This is not an accurate statement of the trial testimony.

ATF Officer Kingery testified that the SGW/Olympic Arms AR-15's were manufactured with some of those M-16 parts. Defense expert Len Savage testified that he had contacted Bob Schuetzen, owner of SGW/Olympic Arms and that during the relevant timer period , SGW's AR-15 rifles had been manufactured at a time with the following M-16 internal parts: trigger, hammer, disconnector and selector.

Although Olofson's AR-15 had the four internal M-16 parts, those four parts do not convert an AR-15 to a machine gun. The combination of those four parts may have contributed to a hammer-follow malfunction, but they do not, by themselves, create a fully operational machine gun. The conversion book, admitted into evidence as government's Exhibit 9, supports this proposition. The conversion book contains three methods for converting an AR-15 to a M-16: (1) M-16 duplication; (2) drop in auto-sear; and (3) lightning link. Neither the drop in auto-sear or lightning link were alleged to have been used with Mr. Olofson's weapon. The conversion at issue here is the M-16 duplication method.

As stated in Chapter One of the conversion book, with regard to the M-16 duplication method:

> "All AR-15 lower receivers, whether they are Colt or after market have been machined in such a way as to leave an excess of metal on the inner rear walls and no auto-sear pin hole is drilled. This is done so the M-16 style auto-sear can't be installed.

> What must be done, simply put, is change it to accept the M-16 auto-sear. To accomplish this you must remove the excess metal from the inner walls of the lower receiver, and drill one small hole for the M-16 auto-sear pin."

(Gov. Ex. 9 at p. 3) According to the conversion book to convert an AR-15 to a M-16 an auto-sear must be added.[1] In fact, according to the conversion book, a notch must be cut out of the receiver of the rifle in order for it to accept an auto-sear. (Gov. Ex. 9 at p. 9). There was no evidence that an auto-sear was ever used with Mr. Olofson's AR-15; nor was there any evidence that any modifications were made to the receiver of Mr. Olofson's AR-15 to accept an auto-sear.

Despite the conversion book's auto-sear requirement, the government adhered to the idea that all that was needed to convert the AR-15 to a machine gun were the following M-16 parts: a M-16 trigger, disconnector, hammer and selector switch. Again, the conversion book, which the government relies upon to support its belief, actually contradicts the government's position:

> "[] the parts needed to convert the AR-15 to M-16 configuration, *other than the M-16 auto-sear parts*, refer to drawings page 13, numbers 1, sear spring, 2 sear pin, 3, sear bushing, and 4 sear body [parts 1, 3, and 4 are normally assembled when you purchase them] are the *M-16 hammer, disconnector, trigger, selector switch and bolt carrier*, shown on page 11."

---

[1] The auto-sear discussed in the M-16 duplication method requires drilling and machining the receiver of the AR-15 to accept a M-16 auto-sear. This is different than the drop in auto-sear, which is designed to function without requiring that any changes be made to the receiver; instead, as the name suggests, the drop in auto-sear simply drops into the receiver.

(Gov. Ex. 9 at p. 14)(*emphasis added*). Not only is an auto-sear required, but a M-16 bolt carrier is also required to convert an AR-15 to a machine gun. There was no evidence at trial that a M-16 bolt carrier was present on Mr. Olofson's AR-15. Without these parts, Olofson's AR-15 could not function as a machine gun.

In fact, ATF Officer Kingery testified that the hammer-follow malfunction in his first test of Olofson's AR-15, also caused the AR-15 to fire automatically in the second test, when the softer primered ammunition was used. This compels the conclusion that it was ultimately the use of the softer primered ammunition that caused the AR-15 to fire multiple rounds in the second test. This is consistent with the government's position throughout the trial that it did not matter how or why, as long as the AR-15 fired more than one round of ammunition with a single pull of the trigger at any single point in time, it is a machine gun.

There was no evidence of an intentional manipulation of Olofson's AR-15 to cause it to fire automatically. If there had been, it can be assumed that the government would have requested that the jury instructions include the portion of the statutory definition of machine gun that includes, "any part designed or intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun. . . ." 26 U.S.C. § 5845(b).

Rather, the evidence merely established that Olofson's AR-15 exhibited a malfunction called hammer-follow, a malfunction that can cause the AR-15 to fire

more than one round of ammunition with a single pull of the trigger by using a specific type of ammunition. Olofson's case is not a unique. The circumstances of Olofson's case were previously addressed by the Tenth Circuit Court of Appeals and the United States Supreme Court in *Staples v. United States*, 511 U.S. 600 (1994).

As recounted by the Tenth Circuit, the Bureau of Alcohol Tobacco and Firearms (BATF) conducted a search of Staples home. *United States v. Staples*, 971 F.2d 608, 609 (1992). The BATF recovered a SGW .223 caliber AR-15 rifle. *Id*. At the time of the search, the AR-15 did not have a bolt carrier or a magazine. *Id*. However, a M-16 bolt carrier was found inside a briefcase that was located in the same room as the AR-15. *Id*. The BATF examined the firearm in its laboratory, which revealed that the AR-15 had been assembled with certain internal parts originally manufactured for fully automatic rifles, including the hammer, the disconnector and the trigger. *Id*. The AR-15 did not, however, have an auto-sear. *Id*. The gun did have a three-position selector switch. *Id*. The BATF agent testified at trial that an external pin or stop on the side of the weapon's receiver had been filed off. *Id*. The reason for doing so is to enable the user of the weapon to rotate the selector switch to the fully automatic position. *Id*. The BATF agents cleaned and oiled the AR-15 and inserted an appropriate magazine, with the M-16 bolt carrier that was found with the AR-15. *Id*. The BATF then loaded the AR-15 with "soft-primer" ammunition and

rotated the selector switch to fully automatic and the weapon fired more than one shot with a single pull of the trigger. *Id*.

Staples was found guilty of possessing an unregistered machine gun. *Id.* He argued on appeal that possession of a machine gun required a scienter element. *Id*. at 611-13. The Tenth Circuit concluded that there was no scienter requirement. *Id*. Staples petitioned the United States Supreme Court for a writ of certiorari on the issue of the scienter requirement. The Supreme Court granted certiorari and held that the government should have been required to prove beyond a reasonable doubt that Staples must have known that his rifle had the characteristics that brought it within the statutory definition of a machine gun. *Staples v. United States*, 511 U.S. 600 (1994). The Supreme Court remanded back to the Tenth Circuit for further consideration. *Id*.

On remand, based upon the facts recounted above, the Tenth Circuit concluded "that no rational juror could find Mr. Staples guilty beyond a reasonable doubt of the offense charged." *United States v. Staples*, 30 F.3d 108 (1994). Accordingly, the Tenth Circuit remanded to the district court with instructions to enter a judgment of acquittal. *Id*.

The facts of Olofson's case are eerily similar to those in *Staples*. One significant difference is that in *Staples*, it appeared that the defendant had filed down a part of the receiver to allow the selector switch to rotate to an automatic position,

whereas in Olofson's case there is no evidence that any part of the receiver had been modified to enable the selector switch to rotate to the automatic position.

In light of *Staples*, the Court must examine the jury's findings that Olofson's AR-15 is a machine gun and that Olofson knew that it is a machine gun. It is entirely unreasonable to believe that Olofson or anyone could know that if a soft primered ammunition is used in his AR-15 a hammer-follow malfunction will occur, causing the AR-15 to expel more than one round of ammunition with a single pull of the trigger. Thus, like the Tenth Circuit in *Staples*, this Court should issue a judgment of acquittal.

Dated at Milwaukee, Wisconsin, April 30, 2008.

Respectfully submitted,

**/s/ Brian T. Fahl**
Brian T. Fahl, Wis. Bar #1043244
Counsel for Defendant
FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.
517 E. Wisconsin Avenue, Room 182
Milwaukee, WI 53202
Tel: 414-221-9900
Fax: 414-221-9901
E-mail: brian_fahl@fd.org

N:\Cases-Open\O-P\Olofson, David - 07-203\Post-Trial\acquittalreply.wpd