22889

#20400, 1-17-67
#20023, 2-11-66

18 AUG 1980

CC-28,778 RMT

MEMORANDUM TO:    Director

FROM:    Chief Counsel

SUBJECT:    Freedom of Information Act Appeal
            of

This is in further reference to the above-noted Freedom
of Information Act request and administrative appeal.
The requestor was advised by letter, dated July 28,
1980, that a final determination would be made within
20 business days of that letter, that is August 22, or
be advised of the reasons for the delay.

By way of background, we note that (the records which are
the subject of this request involve the sale and transfer
of National Firearms Act weapons manufactured and trans-
ferred by                              As part of his
request,                    seeks "[a]ll documents of transfer
applicat
1934 and ending December 31, 1945.") The requestor also
sought "[a]ll documents showing the transfer of each
firearm in the possession of
in 1934 including the model and serial number of each
firearm transferred and the name and address of each
transferee from                            Since the
records concern tax returns and return information sub-
ject to the nondisclosure rules of 26 U.S.C. § 6103(a),
                      enclosed a waiver signed by the President and
secretary of the corporate successor to

By letter dated May 10, 1979, you advised                    that
certain records within the scope of his request were
found during the administrative appeal.  These records
included firearms inventory lists of
prepared by serial number, and a list of industrial
concerns possessing NFA firearms prepared in 1937 for a
congressional committee.  It was also determined that a

4

Director

card file in the NFA Branch indexing registered weapons by serial number contained transfer records within the scope of [ ] request. The letter, dated May 10, 1979, advised [ ] of your determination on the disclosure of the records involved, except for the records in the card file. However [ ] was also advised that the records would be withheld pending verification of the tax waiver submitted by [ ] as the successor to [ ]. Regarding the card transfer records, [ ] was advised that a search for the weapons covered by the inventory lists would result in an expensive search fee and, further, that the cards once retrieved would be subject to deletions under the FOIA exemptions.

By letter dated December 3, 1979, the law firm acting as general counsel to [ ] forwarded appropriate verification showing the changes in the corporation's identity. By letter, dated February 20, 1980, the retrieved records were released, in whole or in part, to [ ]. The letter also requested an advance deposit for conducting the search of the transfer card file indexed by serial number. The letter once again advised that such records, once retrieved, were subject to deletions based on the FOIA. [ ] for- warded a deposit and the transfer cards were retrieved and copied under the supervision of the Disclosure Office. These records are the subject of this memorandum.

Initially, a description of the National Firearms Registration and Transfer Record (NFRTR) is useful. The NFRTR may be entered through two separate filing systems. First, each registered possessor of a firearm has a separate individual file folder within which is a copy of the original registration for each and every firearm in his or her possession. These folders are filed alphabetically by the name of the registered possessor. Thus, when a firearm is transferred, the transfer form registering the weapon to the transferee is filed under the transferee's, not the transferor's name. Second, an index card file is maintained indexing each weapon by serial number (except for those weapons which are registered without serial numbers, which are indexed alphabetically, by the name of the registered owner, in the index card file).

5

- 3 -

Director

Since the transfer forms are filed under the name of the
transferee,          request for all transfer appli-
cations by                    as transferor during the years
in question did not describe documents that could be
retrieved as described. However, since the Bureau was
releasing serial number inventory lists prepared by
            during the years in question, those lists
provided descriptions of records that were retrievable
in the index card file. After advising         of
those cards, he expressed his intent that the cards were
records he sought (see letter, dated January 30, 1980,
from requestor), and made an advance deposit to cover
the search.

In our memorandum to you, dated May 8, 1979, we stated
that the identity of the initial transferee was tax
return information to         . That statement was
made with respect to a list of businesses possessing NFA
firearms prepared in 1937 for a Senate subcommittee.
However, a review of that compilation, along with the
other records mailed in the first release to the
requestor, indicates that no transferees (as that term
is used in the NFA) were disclosed as such, since the
vast majority of the information disclosed involved
sales by         prior to the enactment of the
1934 National Firearms Act. Further, in your appeal
determination letter, as well as the letter accompanying
the first release and seeking a deposit prior to con-
ducting the search for the transfer cards,
was never advised that the initial transferee would be
disclosed. Instead,         was told that, once
retrieved, the transfer cards would have to be reviewed
for disclosure and that it was possible that only limited
information could be disclosed after incurring a con-
siderable search and copying fee. However, it must be
noted that         was never expressly advised that
the initial transferee would not be released and since
this is the information he chiefly desires, it is
questionable whether he would have authorized the search
had he been so advised.

## The Transfer Card Records

The transfer cards, or in some cases captioned
"Registration Card," contain a description of the
firearm by serial number, model, caliber and kind.

6

Case 2:06-cr-00320-CNC   Filed 05/01/08   Page 3 of 20   Document 84-2

Director

The front of the card names the initial registrant and the Internal Revenue District where the firearm was registered. While on some cards the first transfer by is written on the front of the card, for most of the cards the initial and all subsequent transfers are recorded on the reverse side. For a number of cards, no subsequent transfers are listed.

The general format of the transfer record contained on these cards states the type of return form(s) submitted to make the transfer and states the name of the transferor and transferee. Six different return forms appear on the various cards. It should be noted that the following description of the forms are for the returns used during the years 1934-1945 since the records retrieved concern that period.

Form 1 - Registration of Firearms.

Form 2 - Return of Firearms Manufactured, Imported, or Received by Manufacturer, Importer, Dealer (Other than Pawnbroker), and Pawnbroker Under the National Firearms Act (Aug. 1934). This return was submitted upon the receipt of NFA firearms by a person licensed under the National Firearms Act.

Form 3 - Return of Firearms Transferred or Otherwise Disposed of By Manufacturer, Importer, Dealer (Other than Pawnbroker), and Pawnbroker Under Chapter 25, Subchapter B, Internal Revenue Code (Aug. 1940). This return was filed by the transferor who was an NFA licensed person upon the disposition of any NFA firearm.

Form 4 - Order Form for Transfer of Firearm. This form was first submitted by the applicant-transferee to the transferor who, in turn, filled in additional information about the weapon involved. The transferor then forwarded the form to the Commissioner of Internal Revenue (CIR) for approval. The CIR approved form was returned to the transferor who gave it to the transferee along with the delivery of the firearm.

7

Director

Form 5 - Application for Exemption From Payment of
Transfer Tax on Firearms Under the National
Firearms Act (Nov. 1935). This form was
submitted by the transferor to justify a
tax-free transfer of the firearm to one of the
tax-exempt categories of recipients under the
NFA, such as the Federal Government or a State
or local government.

Form 6 - Application for Importation of Firearms. The
form was submitted by the importer. This form
was also used to permit "war trophy" firearms
to be brought into the United States.

In a typical first transfer, more than one form was
submitted. For example                    would submit
both a form 3 and form 5 to effect a tax-exempt transfer
either to the United States or to a police department;
or, when                    would sell a firearm to another
NFA licensed person,                    would submit a form 3
recording the disposition and the recipient would file a
form 2 showing the receipt of the firearm. Regarding
tax-exempt transfers, it is not uncommon that the
recipient, such as a police department, subsequently
filed a form 1 registering the firearm to the entity.

## Law

The Freedom of Information Act exempts from disclosure
material which is "specifically exempted from disclosure
by statute" provided that such statute meet enumerated
criteria. 3 U.S.C. § 552(b)(3). Title 26, U.S.C.,
§ 6103, entitled "Confidentiality and disclosure of
returns and return information," has been held to be
such a statute by the Federal court in the jurisdiction
where the requestor resides. Chamberlain v. Kurtz, 589
F.2d 827 (5th Cir. 1979). Section 6103(a) prohibits
disclosure of returns or return information except as
provided by Title 26, U.S.C.

The Internal Revenue Code provisions relevant to whether
information contained on the transfer cards may be dis-
closed to Mr. Smith, as a designee of the taxpayer, Auto
Ordnance, are as follows:

26 U.S.C. § 6103(b). Definitions. For purposes of
this section--

*8*

22889

- 6 -

Director

(1) Return.--The term "return" means any tax
or information return, declaration of
estimated tax, or claim for refund required
by, or provided for or permitted under, the
provisions of this title which is filed
with the Secretary by, on behalf of, or
with respect to any person, and any amend-
ment or supplement thereto, including
supporting schedules, attachments, or
lists which are supplemental to, or part
of, the return so filed.

(2) Return information.--The term "return
information" means--

(A) a taxpayer's identity, the nature,
source, or amount of his income, payments,
receipts, deductions, exemptions, credits,
assets, liabilities, net worth, tax
liability, tax withheld, deficiencies,
overassessments, or tax payments, whether
the taxpayer's return was, is being, or
will be examined or subject to other
investigation or processing, or any other
data, received by, recorded by, prepared by,
furnished to, or collected by the Secretary
with respect to a return or with respect to
the determination of the existence, or
possible existence, of liability (or the
amount thereof) of any person under this
title for any tax, penalty, interest, fine,
forfeiture, or other imposition, or offense.

*     *     *     *     *

but such term does not include data in a form
which cannot be associated with, or otherwise
identify, directly or indirectly, a particular
taxpayer. (Emphasis added.)

(3) Taxpayer return information.--The term
"taxpayer return information" means return
information as defined in paragraph (2) which
is filed with, or furnished to, the Secretary
by or on behalf of the taxpayer to whom such
return information relates.

9

Case 2:06-cr-00320-CNC   Filed 05/01/08   Page 6 of 20   Document 84-2

Director

\* \* \* \* \*

(6) Taxpayer identity.--The term "taxpayer identity" means the name of a person with respect to whom a return is filed, his mailing address, his taxpayer identifying number (as described in section 6109), or a combination thereof.

\* \* \* \* \*

(c) Disclosure of returns and return information to designee of taxpayer.--The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or persons if the Secretary determines that such disclosure would seriously impair Federal tax administration. (Emphasis added.)

26 U.S.C. § 7701. Definitions.

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof--

(1) Person. The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

\* \* \* \* \*

(14) Taxpayer. The term "taxpayer" means any person subject to any internal revenue tax.

10

- 8 -

Director

In the present administrative appeal, since the requestor
has submitted a waiver from /          authorizing him
under section 6103(c) to receive their returns and return
information, it must be determined what information con-
tained on the cards is not tax return information covered
by the waiver.

As noted above, the forms 3 and 5 were submitted by the
transferor and the form 4 was jointly submitted by both
the applicant-transferee and the transferor. For the
initial transfer from          (as well as any
subsequent transfers back and forth to J          for
firearm repairs), the information on the transfer cards
identifying both the transferor and transferee would
have been obtained from returns filed, in whole or part,
by          The principal question is whether the
identity of the initial transferee is return information
to both the transferor and transferee. If such data is
return information to the transferee, then arguably the
waiver under section 6103(c) does not permit the disclo-
sure of the transferee's identity since it authorizes a
taxpayer to waive the confidentiality provisions of
section 6103 only for "the return of any taxpayer, return
information with respect to such taxpayer." In other
words, ATF could only disclose the fact that [
          registered the firearm and transferred it, but
could not disclose the identity of the transferee without
the latter's waiver. For the reasons stated below, we
believe that the fact of registration may be considered
tax return information to certain transferees. However,
where the tax return naming the transferee was filed
solely by          then we recommend release of
the transferee's identity thereon listed since the
courts have held that the Secretary has no discretion
under section 6103(c) to withhold a return from the
taxpayer's designee. Since the transfer cards merely —
record the receipt of the tax return from
and list four items of data listed on the return, it
does not seem legally defensible to classify the cards
as return information of both the transferor and trans-
feree where the return itself containing the same four
items would have to be disclosed. We note here that
all transfers made subsequent to the          trans-
actions are clearly outside the scope of the waiver
since those transactions are tax return information to
other taxpayers. This material includes any subsequent
Form 1, Registration of Firearms, made by the transferee.

II

- 9 -

Director

The status of the transferee under 26 U.S.C. Chapter 53,
is different from the treatment accorded persons who are
"taxpayer(s)" under the other provisions of the Internal
Revenue Code (IRC). Under present law, the transferee
is never liable for the payment of the transfer tax,
26 U.S.C. § 5811(b), nor was the transferee liable for
the tax under the law in force at the time the records
involved were created. Section 3(a) of the National
Firearms Act, 48 Stat. 1237 (hereinafter referred to as
the 1934 Act). The legal obligation to register the
firearm being transferred is also placed on the trans-
feror by 26 U.S.C. § 5841(b), which states, in part:
"Each firearm transferred shall be registered to the
transferee by the transferor." Adherence to the trans-
fer requirements would also have registered a gun to the
transferee under section 5(a) of the 1934 Act.

While the IRC does not require payment of the tax or
places the duty to register on the transferee, the IRC
does place certain responsibilities and legal sanctions
on the transferee as a requisite to the lawful posses-
sion of the firearm. First, no transfer may be made
unless pursuant to an application, 26 U.S.C. § 5812(a).
The general application, form 4, requires the transferee
to provide certain information and sign the form.
27 C.F.R. §§ 179.84 and 179.85. If the transfer is
between special (occupational) taxpayers, or to the
United States, or to any State, political subdivision
or official police organization of such government
entity engaged in criminal investigations, then the
transferor submits a form 3 or form 5 establishing the
tax-exempt status of the transfer transaction, instead
of the form 4. 27 C.F.R. §§ 179.88, 179.89, and 179.90,
respectively.

Second, once the firearm is registered to the
transferee, the IRC requires the person possessing the
firearm to "retain proof of registration which shall be
made available upon request." 26 U.S.C. § 5841(e). The
regulations enable the possessor to comply with this
duty since the regulations require the transferor to
deliver a copy of the approved transfer form along with
the firearm to the transferee.

/2

22889

- 10 -

Director

Third, subchapter C of 26 U.S.C. Chapter 53, enumerates the prohibited acts under the NFA, and many of the prohibited acts are directed to the conduct of the transferee. Section 5861 provides, in part:

It shall be unlawful for any person--

    *        *        *        *        *

(b) to receive or possess a firearm transferred to him in violation of the provisions of this chapter; or

(c) to receive or possess a firearm made in violation of the provisions of this chapter; or

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(e) to transfer a firearm in violation of the provisions of this chapter; or

(f) to make a firearm in violation of the provisions of this chapter; or

(g) to obliterate, remove, change, or alter the serial number or other identification of a firearm required by this chapter; or

(h) to receive or possess a firearm which is not identified by a serial number or other identification required by this chapter obliterated, removed, changed, or altered; or

(i) to receive or possess a firearm which is not identified by a serial number as required by this chapter; or

(j) to transport, deliver, or receive any firearm in interstate commerce which has not been registered as required by this chapter; or

(k) to receive or possess a firearm which has been imported or brought into the United States in violation of section 5844; or

13

Case 2:06-cr-00320-CNC   Filed 05/01/08   Page 10 of 20   Document 84-2

- 11 -

Director

> (1) to make, or cause the making of, a false
> entry on any application, return, or record
> required by this chapter, knowing such entry to
> be false. (Emphasis added.)

Any person who violates or fails to comply with any
provision of 26 U.S.C. Chapter 53 may be fined not more
than $10,000, or be imprisoned not more than ten years,
or both. 26 U.S.C. § 5871. Further, any firearm
involved in any violation of 26 U.S.C. Chapter 53 is
subject to seizure and forfeiture. 26 U.S.C. § 5872(a).

Based on the above, it is apparent that since the
transferee is not liable for the transfer tax, nor
responsible for submitting the transfer return (except
for a portion of the form 4), such transferee does not
fall within the general definition in section 7701 of
"taxpayer" as "any person subject to any internal
revenue tax." Nevertheless, it is also apparent that
the transferee, as such, has a status under Chapter 53
of the IRC which imposes criminal penalties on the
transferee and provides for the civil forfeiture of the
transferee's firearm. Noteworthy is the qualification
contained in section 7701(a) on the application of the
general definitions stating that the several definitions
apply only "where not otherwise distinctly expressed or
manifestly incompatible with the intent thereof." There-
fore, for purposes of determining the application of the
disclosure provisions of section 6103 on the release of
information collected by the Secretary under Chapter 53
the fact that the transferee is not liable for the tax
does not necessarily mean that the transferee is not a
"taxpayer" with respect to "return information" subject
to section 6103.

Section 6103(a) establishes the general rule that
returns and return information are to be confidential,
and disclosed only in statutory enumerated situations.
As noted earlier, "return information" is broadly
defined to cover not only the taxpayer's identity and
information regarding items of income and the like, or
the fact of a tax return investigation, but also
includes:

> "any other data, received by, recorded by,
> prepared by, furnished to, or collected by the

14

- 12 -

Director

> Secretary with respect to the determination of
> the existence or possible existence of liability
> . . . of any person under this title for any
> tax, penalty, interest, fine, forfeiture, or
> other imposition, or offense, . . .
> (Emphasis added.)

By referring to "any person," rather than any taxpayer,
the statutory definition recognizes that information
submitted to the Secretary by one person can be return
information to another person.

The legislative history of section 6103 merely reiterates
the breadth of "return information," without providing
any further elaboration on the Congress' intent. The
Senate Report, in which section 6103 was first intro-
duced in the Tax Reform Act of 1976, states, in part:

> It also includes any particular of any data,
> received by, recorded by, prepared by, furnished
> to, or collected by IRS with respect to a return
> filed by the taxpayer, or with respect to the
> determination of the existence, or possible
> existence of liability . . . for any tax,
> penalty, interest, fine, forfeiture, or other
> imposition, or offense provided for under the
> code. S. Rep. No. 94-938, Part I, 94th Cong.,
> 2d Sess. 318 (1976).

The Conference Committee summarized this part of the
Senate amendment by stating:

> "Return information" is defined as any data
> received by or prepared by the Secretary with
> respect to a return or with respect to the
> determination of the liability of any person
> for any tax, penalty, interest, fine,
> forfeiture, or other imposition. H.R. Conf.
> Rep. No. 94-1515, 94th Cong., 2d Sess. 476
> (1976).

In Chamberlain v. Kurtz, 589 F.2d 827 (5th Cir. 1979),
the court was more specific than the above-quoted legis-
lative history in stating what constitutes "return
information" under the portion of the definition quoted
above. The court recognized case reports, witness state-
ments and grand jury testimony, memorandum of conferences,

15

Director


and IRS in-house letters constituted "return
information" because the documents were collected or
prepared by the Secretary and related to either the tax
liability of third party taxpayers or to the potential
liability of the requestor-taxpayer for deficiencies or
penalties. 589 F.2d at 840-41. However, the court's
description of the documents do not indicate whether any
of the documents were prepared by the plaintiff-requestor
as a taxpayer, but were withheld on the grounds that
they also constituted "return information" to a third
person. Thus, with respect to "return information,"
Chamberlain, supra, does not directly address the issue
involved in the present request.

Due to the uniqueness of the taxing scheme established
under 26 U.S.C. Chapter 53, the disclosure cases relating
to other IRC provisions do not resolve the question of
whether the transferee is a "taxpayer" or is a person
entitled to the "return information" protection of
section 6103(a). Rather, a general analysis of purpose
and structure of section 6103 provides the only guidance.

Recent court decisions have recognized that section 6103
is the sole criteria for determining the disclosure of
tax returns and return information, and one court has
held that, even in a FOIA suit, the applicable standard
of review is under the Administrative Procedure Act,
5 U.S.C. §§ 701 et seq. Zale Corporation v. IRS, 481
F. Supp. 486, 490 (D.D.C. 1979). Since section 6103 is
a statute independent of the FOIA, it "is not subject
to the requirement that FOIA exemptions be construed
narrowly," even though the agency may still rely on
FOIA exemptions to withhold information otherwise
disclosable under section 6103. Moody v. IRS, Civ.
Action No. 77-1825, D.D.C., February 28, 1980 (Prentice-
Hall, Government Disclosure, ¶ 80,055). Section 6103 is
a "legislative proclamation of a rule of confidentiality
with limited statutory exceptions," Zale Corporation,
supra, at 489, and the Third Circuit has observed in
regards to the disclosure authorization under section
6103(h)(3)(A) that:

   "We must be ever mindful that when Congress
   enacts a statute designed to limit the
   government intrusion in the private affairs of
   its citizens, the statutory provisions must be

16

22889

- 14 -

Director

> followed scrupulously." United States v.
> Bacheler, 611 F.2d 443, 447 (3d Cir. 1979).

In section 6103(e), Congress expressly provided for the
disclosure of special types of returns and return infor-
mation, such as joint individual returns, partnership
returns, corporation returns, estate returns and trust
returns. None of these sections are applicable to
whether the NFA transferee has a material interest in
the return submitted by the transferor. Except for
section 6103(o)(1) which authorizes the disclosure of
subtitle E (i.e., Chapters 51-53) tax information to
Federal employees whose official duties require such
information, the only disclosure subsection regarding
Chapter 53 returns and return information is section
6103(d) governing disclosure to State tax officials,
That section does not include Chapter 53 tax information
in the thirteen enumerated IRC chapters of tax informa-
tion that shall be disclosed. Finally, it should be
noted that apart from the section 6103 nondisclosure
rule, section 5848 restricts the evidentiary use of
information obtained from a natural person as part of
the registration procedure in any criminal proceeding
with respect to a violation of law occurring prior to
or concurrently with the filing of the application or
registration, except for furnishing false information.
Based upon this section and the Solicitor General's
assurances that "no information filed is as a matter of
practice disclosed to any law enforcement authority,"
except the fact of registration as may be necessary to
an investigation or prosecution under the NFA, the
United States Supreme Court held that the present NFA
did not violate the Self-incrimination Clause of the
Fifth Amendment. United States v. Freed, 401 U.S. 601,
604-05 (1971).

Based on the above, we believe that a reasoned argument
supports the conclusion that the fact of registration of
an NFA firearm is "return information" to the transferee
since that fact is collected by the Secretary to deter-
mine whether a fine, penalty, or forfeiture is applicable
to the transferee. Even though the transferee does not
fall within the general definition of "taxpayer" in
section 7701(a)(14), the transferee's identity should be
accorded the protected status under section 6103 in light

17

Director

of the responsibilities and sanctions placed on the
transferee as a possessor under the 26 U.S.C, Chapter 53.

The remaining question involves determining the scope of
the information on the transfer cards that may be dis-
closed to            The requestor submitted a waiver
by'                             Under section 6103(c),
the secretary may disclose to the designee of a taxpayer
the "return of any taxpayer, or return information with
respect to such taxpayer." In Chamberlain v. Kurtz,
supra, the Fifth Circuit interpreted this section (and
section 6103(e)(6)) to mean:

> They give the taxpayer unrestricted access to
> his own return, but as to other information or
> materials collected by the IRS in determining
> tax liability, availability is conditioned on
> the Secretary's determination that such access
> would not impair tax administration. 589 F.2d
> at 837. (Emphasis added.)

In Moody v. IRS, supra, the District Court for the
District of Columbia held that the Secretary had broad
discretion under section 6103(c) and could apply other
FOIA exemptions to withhold return information instead
of merely the impairment of the tax administration
standard recognized in Chamberlain, supra. However, the
court's remarks on the Secretary's discretion was in
reference to "return information" and not to "returns."

By recognizing the absolute right of the taxpayer to
have the latter's return given to a designee, it appears
incongruous to conclude that the initial transferee
information on the transfer card is return information
with respect to            hat the Secretary has
discretion to withhold where            is the
taxpayer who filed the return. The transfer card
contains four items of information taken directly from
the return. Those items are the type of return form
used, the date of the return, the name of the transferor
and the name of the transferee. Only in the case of the
form 4 would the transferee's identity have been written
on a portion of the form completed only by the applicant-
transferee. In the present case, only two out of the
approximately 1,500 transfer cards involved are form 4
transfers to individuals. With the exception of a few

18

Director

transfers to special (occupational) taxpayers, all of
the other cards are forms 3 and 5 transfers from
to either the Federal Government or to state
and local law enforcement agencies.

In other words, assuming the forms 3 and 5 filed by
were available, ATF would be obligated to
release the returns even though the same four items of
information are on those forms. As noted in the earlier
description of the National Firearms and Registration
Transfer Record, the transfer forms are filed under the
name of the transferee as the registered possessor of
the firearm.              Initial request sought all
"documents of transfer applications" filed with the
Federal Government by              between 1934 and
1945. As worded, this request did not identify records
that could be retrieved under.              name. To
the extent that the transfer forms have not been
destroyed, the transfer cards make these transfer appli-
cations identifiable records since the forms should be
in a folder under the transferee's name. (It is our
understanding that all of the forms transferring fire-
arms to the United States during the time involved have
been destroyed.) Should a search be conducted and these
forms retrieved, they would have to be disclosed in full.
Since the transfer cards act as an index of the transfer
forms filed, it is difficult to justify deleting the
transferee's name on the card on the basis that it is
"return information" to the transferee, while using the
same card to locate a transfer form for release that
discloses the transferee's name.

Other legal considerations mitigate the conclusion
that all transferees' identities constitute "return
information" to each transferee. A large number of the
cards involve transfers to the Federal Government. It
is difficult to argue that the fact of these transfers
is "return information" to the Federal Government.
First, the Federal Government is not a "person," and,
therefore, not a "taxpayer" under the general definitions
in section 7701. Second, the present NFA excludes NFA
firearms in the possession of the United States from
registration in the NFRTR. Finally, ATF has previously
recognized that a transfer from the United States to a
person or entity is not a taxable transaction within the

19

Case 2:06-cr-00320-CNC   Filed 05/01/08   Page 16 of 20   Document 84-2

Director

purview of the NFA. Chief Counsel Opinion No. 20400, dated February 17, 1967, held that a transfer by a Federal Reserve Bank was not a taxable event since such Government entities were immunized by statute from Federal tax. However, the opinion also advised that a Federal agency in possession of an unneeded NFA firearm should abandon it to GSA rather than sell it to a dealer or private individual. Therefore, we do not believe that the rationale for determining that the fact of registration is "return information" to the transferee applies to firearms transferred to the United States. Such information is return information solely to the transferor who files the return to justify his exemption from the transfer tax.

On the remaining transfer cards the vast majority of the initial transferees are State and local law enforcement agencies. Some of the considerations for determining the transferee status is not tax return information to the entities of the United States, also apply to State and local entities. These entities are not "persons" under section 7701. Regarding the application of the transfer tax under Chapter 53, to the States, the Bureau has taken the position that a State entity may transfer a NFA weapon free of the transfer tax. Since the NFA does not provide for such an exemption, the basis of the position is founded on the implied immunity under the United States Constitution of the transferring agency from Federal taxation as a State instrumentality. Chief Counsel Opinion Nos. 20023, dated February 11, 1966, and 20400, dated February 17, 1967. However, the State entities are subject to the registration requirements and, further, are subject to certain restrictions on the subsequent transfers of form 10 registered firearms.

Based on the above, we recommend that the information recorded on the transfer cards provided solely by tax returns filed by                    is material that should be released to the requestor as designee of the tax-payer. The form 4 tax return, however, is prepared in part by both the transferor and transferee. We recommend that references to these returns be deleted. (See, pages 189 and 321.) Since they are jointly pre-pared, it is not clear that one preparer could authorize release of the return. Finally,                    filed

20

22889

- 18 -

Director

forms 2 upon receipt of firearms returned for repairs.
We recommend releasing this information under the same
rationale discussed above, since these forms 2 were
filed only by

Apart from listing the transferor and transferee, the
transfer cards contain various other types of informa-
tion and administrative markings.

Many of the transfer cards concerning the firearms
acquisition by State and local law enforcement entities
include the name of the sheriff or police chief to whose
attention the firearm was shipped. 5 U.S.C. § 552(b)(6)
exempts from disclosure "personnel and medical files and
similar files the disclosure of which would constitute a
clearly unwarranted invasion of personal privacy." In
Wine Hobby USA, Inc. v. IRS, 502 F.2d 133 (3d Cir. 1974),
the court held that a list of names and addresses on
forms submitted by a family member to permit home wine-
making fell within the scope of the "files" included in
exemption (b)(6). In general, we believe that the NFRTR
material is a "file" within the meaning of this exemption
since the fact that one possesses a registered firearm
or other regulated weapon is the "personal quality of
information" that is the "common denomination" of the
type of files enumerated in exemption (b)(6). 502 F.2d
at 135. The second question is whether disclosure would
result in a clearly unwarranted invasion of personal
privacy. The Attorney General has stated that such
information must be of a nature that a person "could
reasonably assert an option to withhold it from the
public at large because of its intimacy or its possible
adverse effects upon himself or his family." Attorney
General's Memorandum on the 1974 Amendments to the
Freedom of Information Act, page 10. In Wine Hobby,
supra, the court held that information about one's home
and family was protected where the only "public interest"
was "private commercial exploitation." 502 F.2d at 137.
To the extent that the cards identify private citizens
who possess NFA firearms, we believe exemption (b)(6)
may be applied to withhold their identities. (See,
reverse of page 321.) However, where a person is named
simply as a public official who received the firearm
on behalf of the law enforcement entity purchasing
the firearm, we do not believe that this is the type
of personal information protected by the exemption.

21

Case 2:06-cr-00320-CNC   Filed 05/01/08   Page 18 of 20   Document 84-2

22889

- 19 -

Director

We, therefore, recommend disclosure of the material where the initial transferee's identity includes the name of a public employee.

Several other items appear on the transfer cards. The recipient of a NFA firearm who was also a NFA licensed person filed a form 2 return for receipt of the firearm. Thus, a NFA licensed person receiving a firearm from that ____ would file a form 2 for the same transaction filed a form 3. We recommend deleting any reference to the form 2 filed by these taxpayers since the existence of the form would disclose their status as a person possessing a special (occupational) tax stamp under the NFA. The status is "return information" to these taxpayers.

Several firearms were transferred and registered to sales representatives of ____ for demonstration purposes. The transfer cards disclose that these guns were still owned by ____ and were subsequently returned to the company. Since these weapons were registered to the sales representatives in an agency capacity with ____ we recommend release of this information since the transferees possessed the firearms solely as part of their duties with ____. Also, the instructions on the Form 1, Registration of Firearm states that when an employee has custody of the firearm, it should be registered to the actual owner. Therefore, it is not clear that these firearms should have been registered to the sales representatives. However, the registration information was withheld where the firearm was registered to a person without any agency relationship indicated on the card, even though that person's name had appeared on another transfer card as a sales agent. In these cases, it should be assumed that the firearms registration is tax return information to the person registering the firearm.

The transfer cards recording subsequent transfers contain docket numbers. (See, for example, the reverse of page 22.) These numbers correspond to a docket book maintained by the NFA Branch in which all incoming transfer forms are recorded. This docket book contains the following type of information: type of form

22

22889

- 20 -

Director

received, date of form, date of receipt by ATF, names of the transferor and transferee, type of action taken by ATF, and date ATF mailed out notification of its action. Since the number does not identify a particular taxpayer, it falls outside the definition of return information in section 6103(b)(2). See, generally, Long v. IRS, 596 F.2d 362, 368-69 (9th Cir. 1979). Also, the number does not fit within the definition of "taxpayer identity" under section 6103(b)(6). Finally, the NFA Branch could not determine any demonstrable harm in disclosing the number that would justify exercising the internal practices exemption under 5 U.S.C. § 552(b)(2). Therefore, we recommend disclosure of docket numbers.

Several cards refer to an "A.T.U. Report" prepared in 1942. (See the reverse of pages 146, 150, and 154.) The reference is apparently to the Bureau's predecessor Alcohol Tax Unit in IRS. Since the reference does not disclose any particular transfer transaction or the fact of possession by a person, we believe disclosure of the mere reference to the report is not prohibited by section 6103(a).

Finally, as a result of the transfer cards being retrieved by serial number, the NFA Branch personnel photocopied some cards where the initial registration was made by a person other than ⬛ We recommend these cards be deleted in full since the information contained thereon is not return information subject to the waiver by

If you are in agreement with the above recommendation, we have prepared a letter so advising the requestor of the decision.

(Signed) Marvin J. Dessler

Marvin J. Dessler

Attachments

23

Case 2:06-cr-00320-CNC    Filed 05/01/08    Page 20 of 20    Document 84-2