IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

---

UNITED STATES OF AMERICA
Plaintiff

vs. Criminal No. 88-11

JAMES P. CORCORAN

Defendant

---

PROCEEDINGS

Transcript of excerpts of proceedings on April 5, 1988, United States District Court, Pittsburgh, Pennsylvania, before Honorable Donald E. Ziegler, District Judge, and a jury.

APPEARANCES:

For the Government: By: David M. Curry, Esq.

For the Defendant: By: Richard H. Galloway, Esq.

Reported by:
John Wayne Struble,
Official Court Reporter
1017B, U.S. Courthouse
Pittsburgh, Pa. 15219
(412) 391-5514

Proceedings recorded by mechanical stenography. Transcript produced by computer-aided transciption.

purpose.

THE COURT: I agree.

MR. CURRY: Congress has defined them as gangster weapons. They are not hunting weapons; they are killing weapons. And there's an additional duty upon those people who are going to engage in this activity to get the questions answered if they have any questions. And as evidenced by these documents introduced through Mr. Owen, some people took the care to write and get a written response. They could rely upon that.

In my brief I discuss the question of reliance. No question but what a citizen can rely upon what he's told. There's no indication in this case whatsoever that there was any reliance upon anything, any of these documents by Mr. Corcoran. That may be a defense. It is not, and the law is very clear as I stated in my brief, a basis for a dismissal of the counts. If he can persuade the jury that he relied upon them and that he should not be punished for violating the law because of his reliance, that is a defense. I recognize that. But it's a defense for the trier of fact, and under the law we have satisfied all requirements for presenting this entire case to the jury.

THE COURT: All right, sir. Thank you. All right, the following shall constitute findings of fact and conclusions of law with regard to the defendant's motion

for judgment of acquittal.

The defendant's motion with respect to count 1 will be denied.

Further, the United States has voluntarily dismissed, with prejudice, counts 2 and 3.

With respect to counts 4 through 9, the position of the Department of Treasury in this case is, at best, confusing and, at worst, misleading. It should be remembered that citizens base their activities each day on the basis of their understanding of what is legal and what is not. This is especially true in the realm of gun control legislation, because many citizens have an inexplicable fondness for guns, for reasons that escape this Court.

Congress has provided that any gun that fires more than one round with a single pull of the trigger is a machine gun and must be registered with the Department of Treasury. That rule is clear and unambiguous.

On November 1, 1981, its agency ruled that an AR-15, with the single addition of an automatic sear to an AR-15 semiautomatic rifle manufactured with M-16 internal components already installed, will convert such rifles into machine guns. ATF Ruling 81-4, effective November 1, 1981, appears in the Federal Firearms Regulation dated 1984 and 1985 which, we are advised, is currently in effect. No suspensions, modifications or expansions of this ruling

appear in any subsequent issues of the Federal Firearms Regulation.

The AR-15's in this case were transferred by defendant without automatic sears. The essence of due process of law requires that the government make clear that conduct which constitutes a crime. Here, the ATF ruled on November 1, 1981, that an AR-15 with M-16 internal components already installed, will convert to a machine gun with the single addition of an automatic sear. It is inescapable that without the automatic sear the AR-15 with M-16 component parts is not a machine gun and need not be registered. If it did constitute a machine gun, because it may fire more than one round with a single function of the trigger, the agency was required to make that clear in the Federal Firearms Regulations, especially in light of ATF Ruling 81-4 effective November 1, 1981.

In short, once Ruling 81-4 was made and published, the agency was required to supplement that ruling to make clear that conduct which was once legal, or at least arguably legal, was now prohibited.

In addition, the arguments that the agency did change its policy, in letters to interested citizens after November 1, 1981, is without merit. The change must be published in the same manner that the original ruling was published; otherwise, citizens who relied on Ruling 81-4 but did not

inquire of the government could be prosecuted for a crime while other citizens could not.

Defendant's motion for judgment of acquittal at counts 4 through 9 will be granted.

Now, the machine guns that were transferred here, including Exhibit 6, are relevant with respect to count 1.

MR. CURRY: Your Honor.

THE COURT: Yes, sir.

MR. CURRY: If I interpret the Court's ruling, that as a matter of law the machine guns which are the subject of this indictment are not machine guns as defined by the National Firearms Act?

THE COURT: That is correct. Viewing the evidence in the light most favorable to the United States, we find that you have failed to establish a prima facie case on that issue and judgment of acquittal will be granted as to counts 4 through 9 only. The machine guns are relevant with regard to count 1 which deals with dealing in firearms.

Bring in the jury, please.

MR. GALLOWAY: Your Honor, I have one character witness in here, but I was going to call another one instead. He's a County Commissioner and has to be back.

(The following proceedings were held in open court in the presence of the jury).

THE COURT: Ladies and gentlemen, you're entitled

to know what has transpired. The grand jury has returned a 9 count indictment in this case. In the first count, the grand jury has charged from on or about February 25, 1983 to on or about October 18, 1984, in the Western District of Pennsylvania, the defendant, James P. Corcoran, did engage in the business of dealing in firearms without having received a license to do so from the Secretary of Treasury or his designate. That charge remains for you to be decided, whether the United States has established beyond a reasonable doubt that James P. Corcoran, between those dates, was dealing in firearms without having received a license from the Secretary of Treasury.

The United States has voluntarily dismissed counts 2 and 3. Counts 4, 5, 6, 7, 8 and 9 have been dismissed by the Court for the following reasons:

On November 1, 1981, the Department of Treasury ruled that an AR-15, with a single addition of an automatic sear to the AR-15 semiautomatic rifle manufactured with M-16 internal components already installed, will convert such rifles into machine guns. ATF Ruling 81-4, which is effective November 1, 1981, appears in the Federal Firearms Regulation dated 1984 and 85 which, I'm told, is currently in effect. No suspension, modification or expansion of this ruling appears in any subsequent issues of the Federal Firearms Regulation.

The AR-15's in this case were transferred by Mr. Corcoran without an automatic sear. The essence of due process of law requires that the government make clear that conduct which constitutes a crime. Here, the ATF ruled on November 1, 1981, that an AR-15 with M-16 internal components already installed, will convert to a machine gun with the single addition of an automatic sear. It is inescapable that without the automatic sear the AR-15 with M-16 components is not a machine gun and need not be registered, but if it did constitute a machine gun, because it may fire more than one round with a single function of the trigger, the ATF was required, in my view, to make that clear in the Federal Firearms Regulations, especially in light of ATF Ruling 81-4, effective November 1, '81.

In short, once Ruling 81-4 was made and published, the agency was required to supplement the ruling to make clear that conduct which was once lawful, or at least arguably lawful, was now unlawful.

As a result, I have dismissed counts 4 through 9 for those reasons.

And the government has rested its case.

Mr. Galloway, call your first witness.

* * * * *

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

John Wayne Struble,
Official Court Reporter